IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| LUCAS SCHMIDT,<br><br>Plaintiff,<br><br>vs.<br><br>BLUE VALLEY COMMUNITY ACTION,<br><br>Defendant. | 8:23CV39<br><br>**MEMORANDUM AND ORDER** |

Plaintiff filed a Complaint on January 30, 2023. Filing No. 1. Plaintiff has been given leave to proceed in forma pauperis. Filing No. 5. The Court now conducts an initial review of Plaintiff's claims to determine whether summary dismissal is appropriate under 28 U.S.C. § 1915(e)(2).

**I. SUMMARY OF COMPLAINT**

Plaintiff filed a form Complaint for Employment Discrimination seeking damages against Defendant Blue Valley Community Action ("Blue Valley") alleging claims of employment discrimination and retaliation, based on Plaintiff's gender, religion, and disability, under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e-2000e-17, and the Nebraska Fair Employment Practice Act ("NFEPA"), Neb. Rev. Stat.

§§ 48-1101-1126.[1] Filing No. 1 at 2–4. Plaintiff's Complaint also incorporates the charges of discrimination that he filed with the Nebraska Equal Opportunity Commission ("NEOC") and Equal Employment Opportunity Commission ("EEOC") on March 7, 2022, and alleges further discrimination based on religion and disability. *Id.* at 4, 10–11. In assessing Plaintiff's Complaint, the Court will consider the allegations raised in Plaintiff's NEOC charge of discrimination, as well as those raised in the Complaint.[2]

Plaintiff, an "openly gay and married" male, who has bi-polar disorder, alleges that he does not meet the sexual stereotypes assigned to males, was employed by Defendant Blue Valley as a teacher's aide at their Preschool Learning Academy of York ("PLAY") location beginning in June of 2020, and was the only male PLAY staff member out of roughly 20 others. *Id.* at 10, 18–19. As part of his daily job duties, Plaintiff was required to clean classrooms at the end of the day. *Id.* at 18. He alleges that throughout his employment he was often required to clean or finish cleaning the largest classroom but that unlike other female co-workers, he was frequently required to do so without assistance (and was almost always denied assistance when assistance was requested). He alleges that because he was denied assistance, while other female employees completed their tasks quickly, resulting in their being able to leave on time or early, Plaintiff often was unable to complete his cleaning tasks before his shift ended, resulting

---

[1] Specifically, Plaintiff checked the following "Statement of Claim" boxes in his Complaint: "Termination of [his] employment," "Unequal terms and conditions of [his] employment," and "Retaliation," as well as adding claims of "Sexual harassment, wrongful termination, [and] emotional distress." Filing No. 1 at 4.

[2] The Court may consider allegations contained in exhibits attached to the complaint. *See* Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes."); *Blazek v. U.S. Cellular Corp.*, 937 F. Supp. 2d 1003, 1014–17 (N.D. Iowa 2011) (court can consider factual allegations in administrative charge that was attached to federal court complaint in deciding motion to dismiss for failure to state claim).

in him being "spoken to" several times about rooms assigned to him not being completely cleaned by the end of the day. Id.

In addition to being unable to complete his daily tasks, Plaintiff alleges the lack of assistance resulted in Plaintiff being injured when a table fell on his head as he was moving furniture on his own. Id. at 10, 18. Plaintiff alleges that he informed management of the injury, but he was told to continue working and that he later called Human Resources and spoke to Roseanne Hammond ("Hammond") about the injury and about other undescribed "discriminatory behavior" at PLAY. Id. at 18. Plaintiff alleges he was instructed by Hammond to go home and to contact the EEOC officer employed by Blue Valley about his discrimination complaints. Id. Plaintiff alleges that although he spoke to a female Blue Valley EEOC officer and relayed his complaints to her, he was not contacted again by her after their conversation. Id.

Plaintiff also alleges multiple instances of inappropriate sexual discussions taking place at PLAY. Plaintiff asserts he was asked about his sex life with his husband by a female co-worker, he overheard others talking about their own sex lives at work, and a female co-worker drew a picture of male genitalia, handed it to a second female co-worker, who then held the drawing in-between her legs and rubbed it to make fun of him. Id. at 21. Plaintiff alleges that he reported all of these incidents to various supervisors at PLAY, informing them that the sexual conversations made him uncomfortable, but nothing was done aside from a single apology he received from the co-worker who asked about his sex life. Id. at 10.

Further, Plaintiff alleges that he is disabled due to having bi-polar disorder and was treated differently than other employees with bi-polar disorder, being routinely denied and

3

ultimately given only a single half "mental health" day off upon request, unlike another co-worker with bi-polar disorder and other employees who had no known mental health issues, who were routinely granted full days of mental health time off. *Id.* at 19.

Plaintiff declined to obtain a COVID vaccine due to his religious beliefs and requested an exemption from the vaccination requirement. *Id.* at 20. Plaintiff alleges he believes his vaccination status was part of the reason he was terminated as there were only two other employees who were not vaccinated, and of the two, one requested a vaccination exemption and was also terminated while the other did not request an exemption but quit on her own. *Id.* at 20.

Plaintiff further submits, he "gave constructive criticism" about fellow co-workers Katie Hoeffer ("Hoeffer") and Hannah Korn ("Korn") to several supervisors, including informing them of Hoeffer and Korns' extended breaks, lack of contributing to the safety of students, lack of assistance with duties, and other work-related issues, which resulted in Korn and Hoeffer being called in to those same supervisors' office. *Id.* at 11, 20. Afterward, that same day, Plaintiff asserts he was called back into the office to speak with the same supervisors and was informed he was being sent home on administrative leave due to a "complaint" they had received about him. *Id.* at 20–21. Later that week, Plaintiff was spoken to by a supervisor who insinuated he had harmed a child, but refused to discuss what had happened, only insisting that an incident that had happened in the fall, which Plaintiff was praised for handling correctly, was not the incident at issue. *Id.* at 21. He alleges he was then fired on December 2, 2021, without any specific explanation aside from the claim that he "knew exactly" what incident he was being terminated for. Id. at 11, 21.

Immediately after his employment was terminated, Plaintiff filed an EEOC Complaint for retaliation, sexual harassment, and discrimination and also filed for unemployment. *Id.* at 21. He learned from the EEOC that the official reason he was terminated from his employment at PLAY was that he was accused of "slamming [his] hand against the wall very close to a child's head, grabbing them around the waste [sic], and pulling them by the arm across the room." *Id.* at 22. He also learned from the EEOC that Blue Valley claimed to have reported the incident to the Child Neglect and Safety Hotline and to the police, but Plaintiff later determined no reports were made. *Id.*

Plaintiff alleges he has been traumatized by his experience, and while previously "[w]orking with kids brought [him] joy . . . [he] no longer feel[s] [he] can work with children as a result" due to the negative reference he would likely obtain from Blue Valley, and as "[e]ach time [he] see[s] a preschool-aged child, [he] immediately fall[s] into an anxiety attack . . ." *Id.* at 10–11, 18–22.

Plaintiff seeks monetary damages for gender, sexual orientation, and religious discrimination, retaliation, lost benefits, and the cost of health counselling for his alleged emotional distress. *Id.* at 6.

## II.  APPLICABLE LEGAL STANDARDS ON INITIAL REVIEW

The Court is required to review in forma pauperis complaints to determine whether summary dismissal is appropriate. *See* 28 U.S.C. § 1915(e). The Court must dismiss a complaint or any portion of it that states a frivolous or malicious claim, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B).

"The essential function of a complaint under the Federal Rules of Civil Procedure is to give the opposing party 'fair notice of the nature and basis or grounds for a claim, and a general indication of the type of litigation involved.'" *Topchian v. JPMorgan Chase Bank, N.A.*, 760 F.3d 843, 848 (8th Cir. 2014) (quoting *Hopkins v. Saunders*, 199 F.3d 968, 973 (8th Cir. 1999)). Plaintiffs must set forth enough factual allegations to "nudge[ ] their claims across the line from conceivable to plausible," or "their complaint must be dismissed." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 569-70 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.").

"A pro se complaint must be liberally construed, and pro se litigants are held to a lesser pleading standard than other parties." *Topchian*, 760 F.3d at 849 (internal quotation marks and citations omitted). This means that "if the essence of an allegation is discernible, even though it is not pleaded with legal nicety, then the district court should construe the complaint in a way that permits the layperson's claim to be considered within the proper legal framework." *Stone v. Harry,* 364 F.3d 912, 915 (8th Cir. 2004). However, even pro se complaints are required to allege facts which, if true, state a claim for relief as a matter of law. *Martin v. Aubuchon*, 623 F.2d 1282, 1286 (8th Cir. 1980).

### III. ANALYSIS

Plaintiff sues Blue Valley, a private nonprofit organization,[3] for discrimination and retaliation based on Plaintiff's gender, religion, and disability under Title VII and the NFEPA. Filing No. 1 at 3. Plaintiff's Complaint was filed within 90 days of his receipt of

---

[3] *See* BLUE VALLEY COMMUNITY ACTION, *About Us*, available at: https://www.bvca.net/about-us/ (last accessed July 28, 2023).

his right-to-sue notice, *Id.* at 8, and, thus, is timely. *See* 42 U.S.C. § 2000e-5(f)(1) (the charging party has 90 days from the receipt of the right-to-sue notice to file a civil complaint based on his charge).

Federal Courts "analyze discrimination claims under the NFEPA by applying the same analysis for discrimination claims under Title VII." *Edwards v. Hiland Roberts Dairy Co.*, 860 F.3d 1121, 1124 n.3 (8th Cir. 2017). As such, a plaintiff enjoys "no greater success" with his discrimination and harassment claims under the NFEPA where the same claims fail under Title VII. *Al-Zubaidy v. TEK Indus., Inc.*, 406 F.3d 1030, 1040 (8th Cir. 2005); *see also Knapp v. Ruser*, 297 Neb. 639, 901 N.W.2d 31, 43 (2017) ("[T]he NFEPA is patterned after federal Title VII," and Nebraska courts "look to federal court decisions construing Title VII for guidance with respect to the NFEPA."). Therefore, Plaintiff's Title VII and NFEPA claims shall be addressed together here.

Title VII makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). To set forth a prima facie case of discrimination a plaintiff must allege he: "'(1) is a member of a protected group; (2) was meeting the legitimate expectations of the employer; (3) suffered an adverse employment action; and (4) suffered under circumstances permitting an inference of discrimination'" *Schaffhauser v. United Parcel Serv., Inc.*, 794 F.3d 899, 903 (8th Cir. 2015) (quoting *Davis v. Jefferson Hosp. Ass'n*, 685 F.3d 675, 681 (8th Cir. 2012)).

The merits of a claim of employment discrimination, retaliation, or hostile work environment are evaluated under the prima facie analysis established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). At the pleading stage, while Plaintiff need not *prove* a prima facie case, *see Sweirkiewicz v. Sorema, N.A.*, 534 U.S. 506, 513 (2002); *Blomker v. Jewell*, 831 F.3d 1051, 1056 (8th Cir. 2016) ("[T]he prima facie model is an evidentiary, not a pleading, standard."), the elements of a prima facie case may "shed light upon the plausibility of the claim" and are therefore considered when initially evaluating Title VII claims. *Blomker*, 831 F.3d at 1056 (internal quotation marks omitted). Therefore, this Court shall consider the elements of a prima facie case of each of Plaintiff's claims when considering if his claims may proceed.

For the reasons set forth below, as currently written, Plaintiff's Complaint fails to state a claim upon which relief can be granted.

### A. Sex/Sexual Orientation Discrimination - Disparate Treatment

Plaintiff alleges that due (in part) to his sex and sexual orientation he was subjected to "adverse terms and conditions of [his] employment" including sex/sexual orientation discrimination. Filing No. 1 at 10. Specifically, Plaintiff alleges he was "discriminated against on the basis of sex, male, for not conforming to sex stereotypes about how men are supposed to present themselves in [his] physical appearance, actions and/or behaviors." *Id.*

Title VII was designed to eliminate the entire spectrum of disparate treatment of men and women in the workplace. *Los Angeles Dep't of Water & Power v. Manhart*, 435 U.S. 702, 707 n. 13 (1978). Sexual harassment claims under Title VII can arise both from the more traditional forms of gender classifications of male and female as well as those

arising from "sexual orientation." *Bostock v. Clayton Cnty., Georgia,* --- U.S. ---, 207 L. Ed. 2d 218, 140 S. Ct. 1731, 1740 (2020).

Although Title VII requires an employer to give similar treatment to similarly situated employees of both genders, it does not require an employer to give employees in a protected class more favorable treatment than other employees. *Id.* (citing *Texas Dep't of Cmty. Affairs v. Burdine,* 450 U.S. 248, 259 (1981)). Thus, the essence of a "disparate treatment" claim under Title VII is that the plaintiff must show that "'other employees outside of the protected group were allegedly treated more favorably and were similarly situated in all relevant respects.'" *Id.* (quoting *Gilooly v. Missouri Dep't of Health and Senior Servs.,* 421 F.3d 734, 739 (8th Cir.2005)).

To establish a *prima facie* case of disparate treatment based on sex, a plaintiff must show he was: (1) a member of a protected group; (2) qualified to perform his job; (3) suffered an adverse employment action; and (4) treated differently from similarly situated females. *Tenge v. Phillips Modern Ag Co.,* 446 F.3d 903, 910 (8th Cir.2006); *Turner v. Gonzales,* 421 F.3d 688, 694 (8th Cir.2005); *accord Twymon v. Wells Fargo & Co.,* 462 F.3d 925, 934 (8th Cir.2006) (a *prima facie* case of sex or race discrimination requires proof of the following: (1) the plaintiff was a member of a protected class; (2) she was meeting the employer's legitimate job expectations; (3) she suffered an adverse employment action; and (4) similarly situated employees outside the protected class were treated differently). The final element of a *prima facie* case of disparate treatment can also be met "if the employee provides 'some other evidence that would give rise to an inference of unlawful discrimination.'" *Turner,* 421 F.3d at 694 (quoting *Putman v. Unity Health Sys.,* 348 F.3d 732, 736 (8th Cir.2003)). Examples of facts supporting sexual

discrimination claims include allegations that female employees were subjected to heavier workloads or held to a different standard of timekeeping than male employees. See *Ferris v. First Nat. of Nebraska*, No. 4:04CV3286, 2006 WL 1720488, at *7 (D. Neb. June 20, 2006).

Plaintiff plausibly pled that he belongs to a protected group, was qualified for his former job, and suffered an adverse employment action, a termination. *See generally* Filing No. 1. Plaintiff's factual allegations also give rise to the inference that Blue Valley treated male employees differently than it treated female employees in the same position, giving female employees assistance with their classroom duties while he was not, even upon request, giving him the largest areas to clean (and sometimes requiring him to move furniture) without enough time to do so and without assistance, and giving female employees multiple "mental health" days off from work whereas he was only granted one request for mental health time off. *Id.* at 18, 20–22.

Accordingly, for purposes of initial review, Plaintiff has stated a disparate treatment sex-discrimination claim upon which relief may be granted.

### B. Sexual Harassment - Hostile Work Environment

Title VII prohibits sexual harassment both "where an employee's submission to or rejection of a supervisor's unwelcome sexual advances is used as the basis for employment decisions, and hostile work environment harassment, where 'the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Tenge*, 446 F.3d at 907–08. (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (internal quotations omitted)). "Title VII does not concern itself

10

with everything that happens 'because of' sex. The statute imposes liability on employers only when they 'fail or refuse to hire,' 'discharge,' 'or otherwise . . . discriminate against' someone because of a statutorily protected characteristic like sex." Bostock, --- U.S. ---, 140 S. Ct. at 1740 (citing 42 U.S.C. § 2000e–2(a)(1)).

Here, it appears Plaintiff's sexual discrimination claim is more akin to a claim of a hostile work environment based on his gender or sexual orientation. To bring such a claim Plaintiff must show that he "is a member of a protected group, that there was unwelcome harassment, that there was a causal nexus between the harassment and membership in the protected group, and that the harassment affected a term, condition, or privilege of employment." Watson v. CEVA Logistics U.S., Inc., 619 F.3d 936, 942 (8th Cir.2010) (quotations omitted). However, even if all elements are met, "sexual harassment is actionable under Title VII only if it is so severe or pervasive as to alter the conditions of the victim's employment and create an abusive working environment." Clark Cnty. Sch. Dist. v. Breeden, 532 U.S. 268, 270–71 (2001) (cleaned up). The United States Supreme Court has "made it clear that conduct must be extreme to amount to a change in the terms and conditions of employment." Faragher v. City of Boca Raton, 524 U.S. 775, 788 (1998).

A reviewing court should consider all the circumstances pleaded in order to determine if a work environment is "sufficiently hostile or abusive" including: (1) frequency of the discriminatory conduct; (2) severity of the discriminatory conduct; (3) if the discriminatory conduct was physically threatening or humiliating (as opposed to a "mere" offensive utterance); and (4) if the discriminatory conduct unreasonably interfered with the employee's work performance. Faragher, 524 U.S. at 787–788 (quoting Harris, 510

11

U.S. at 23). "[S]imple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." *Id.* at 788 (citation and internal quotation marks omitted).

The Eighth Circuit reiterated the *Faragher* standard, adding:

[A] sexually objectionable environment must be both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so. To be actionable, the conduct complained of must be extreme in nature and not merely rude or unpleasant. Allegations of a few isolated or sporadic incidents will not suffice; rather, the plaintiff must demonstrate the alleged harassment was 'so intimidating, offensive, or hostile that it poisoned the work environment. Such standards are demanding, for 'Title VII does not prohibit all verbal or physical harassment and is not a general civility code for the American workplace.

Nitsche v. CEO of Osage Valley Elec. Co-op., 446 F.3d 841, 845 (8th Cir. 2006) (cleaned up). Upon review, Plaintiff's Complaint fails to allege such a claim.

Plaintiff alleges several isolated instances in his Complaint which could be considered offensive. Plaintiff alleges that on a single occasion he was asked about his sex life with his husband by a female co-worker, that one time other co-workers talked about their own sex lives at work in his presence, and once a female co-worker drew a picture of male genitalia, handed it to a second female co-worker, who then rubbed on the drawing while holding it in-between her legs allegedly to make fun of Plaintiff. Filing No. 1 at 19. Plaintiff alleges he reported all these incidents to supervisors as these conversations and actions made him uncomfortable, but nothing was done aside from a single apology he received from the co-worker who asked about his sex life. *Id.*

The incidents at issue totaling three, are isolated incidents of different natures. First, although Plaintiff alleges that a coworker spoke of her "sex life," comparing her sexual activities with her boyfriend to her former husband, Plaintiff indicates that the

conversation was not directed at him. Such conduct could be considered rude or unpleasant, but certainly does not rise to the extreme level required to support a hostile work environment claim. Similarly, while in another isolated incident a different coworker asked about Plaintiff's sex life, he complained to his supervisor and admitted he received an apology from the offending co-worker. Again, this Court has little difficulty finding this incident does not rise to the level of extreme.

The third incident relating to the drawing of the picture of a penis and laughing at Plaintiff provides a closer case, as the Court has no difficulty determining that such behavior was offensive. However, the facts as pleaded do not qualify as so extreme in nature to qualify as abuse under Title VII as it occurred only once, and Plaintiff makes no allegations that it "poisoned" or otherwise rendered his work environment intolerable. *See Ottman v. City of Independence*, 341 F.3d 751, 760 (8th Cir. 2003) (reversing denial of summary judgment and "conclud[ing] the district court erred in finding a triable issue for the jury" where a coworker made sexist and belittling comments to, about, and around plaintiff "on a weekly, if not daily, basis"); *Scusa v. Nestle USA Co.*, 181 F.3d 958, 967 (8th Cir. 1999) (nine incidents of unpleasant conduct and offensive comments, considered "either individually or collectively," were not "severe or pervasive enough so as to alter a term, condition, or privilege of [ ] employment.").

Moreover, even if the three incidents referenced above did meet the sexual harassment/hostile work environment standard (whether considered together or separately), Title VII imposes liability on employers only if a hiring or firing decision, or other discriminatory action was imposed *because of* a statutorily protected characteristic like sex. *Bostock*, --- U.S. ---, 140 S. Ct. 1740 (emphasis added). Here, Plaintiff does not

13

allege that he was terminated or otherwise punished by Blue Valley *because of* his sex or gender identity. Instead, Plaintiff alleges that Blue Valley refused to explain why he was being terminated, but that he later learned the formal reason for his termination was due to his allegedly "slamming [his] hand against the wall very close to a child's head, grabbing them around the waste [sic], and pulling them by the arm across the room." Filing No. 1 at 22. While Plaintiff avers that the hand slamming incident never occurred and that it was a fabricated story designed to create an excuse to terminate his employment, he surmises that the actual reason for his termination was due to requesting a religious exemption for the COVID-19 vaccine and in retaliation for complaining about the behavior of other co-workers. See *Id.* at 20, 22. Neither theory, even though insufficient to state a claim on which relief can be granted based on their theoretical and conclusory nature, as previously discussed, *see Ashcroft,* 556 U.S. at 678, provide any factual basis to support the position that Plaintiff's employment was terminated due to his sex or sexual identity.

Accordingly, Plaintiff has failed to state a sexual harassment/hostile work environment claim upon which relief may be granted.

### C. Religious Discrimination

"To establish a prima facie case of religious discrimination, a plaintiff must show: (1) [ ]he is a member of a protected class because of [his] religious beliefs, (2) [ ]he met [his] employer's legitimate expectations, (3) [ ]he suffered an adverse employment action, and (4) the circumstances give rise to an inference of discrimination." *Shirrell v. St. Francis Med. Ctr.*, 793 F.3d 881, 887 (8th Cir. 2015) (citing *Gibson v. Am. Greetings Corp.,* 670 F.3d 844, 853 (8th Cir. 2012)). Circumstances establishing an inference of

discrimination include "treating similarly situated employees who are not members of the protected class in a different manner." *Id.* (citing *Gibson*, 670 F.3d at 853–54). "Employees are similarly situated in all relevant respects when they are involved in or accused of the same offense and are disciplined in different ways." *Ward v. Procter & Gamble Paper Prods. Co.*, 111 F.3d 558, 560 (8th Cir.1997).

Here, Plaintiff's Complaint fails to plausibly state a claim for religious discrimination as he fails to plead facts in his Complaint and supporting documents which give rise to an inference of discrimination based on his religious beliefs.[4] In support of his claim Plaintiff alleges that he sought an exemption from COVID-19 vaccine requirements, filling out an exemption request indicating he did not wish to receive the vaccine due to his "personal and deeply routed [sic] religious beliefs." *Id.* at 20. He also discovered that of the three other co-workers who were unvaccinated, one filled out the vaccine exemption request and was terminated "and was accused of the same things" as Plaintiff was, and the other quit of her own volition.[5] *Id.* at 22. Finally, he theorizes that he "believe[s] that part of my request for a religious exemption contributed to [his] termination and felt discriminated due to [his] religious beliefs." *Id.* at 20.

The only accommodation Plaintiff requested was a vaccine exemption. *Id.* Other courts have found such a request is foreclosed from a religious discrimination claim under Title VII. *See D'Cunha v. Northwell Health Sys.*, No. 1:22-CV-0988 (MKV), 2023 WL 2266520, at *3 (S.D.N.Y. Feb. 28, 2023) (citing *We the Patriots USA, Inc. v. Hochul*, 17

---

[4] The Court need not address the remaining elements of a Title VII religious discrimination claim where a Plaintiff fails to give rise to an inference of discrimination. *See Shirrell*, 793 F.3d at 887.

[5] The Court notes that while Plaintiff alleges there were "3 other [employees] who filled out an exemption request," he only discusses two. *See* Filing No. 1 at 22.

15

F.4th 266, 292 (2d Cir. 2021), *opinion clarified*, 17 F.4th 368 (2d Cir. 2021) (holding that "Title VII *does not require* covered entities to provide the accommodation that Plaintiffs prefer—in this case, a blanket religious exemption allowing them to continue working at their current positions unvaccinated) (emphasis added)). Moreover, while Plaintiff identifies one coworker who sought exemption from the vaccine, who was also terminated, there is no indication in Plaintiff's Complaint that the co-worker's exemption request was a religious one. Finally, while Plaintiff alleges that he believed Blue Valley denied his exemption request not for religious reasons, but as "an excuse to terminate" his employment, Plaintiff fails to allege his exemption request was denied. Filing No. 1 at 22. Again, to the extent Plaintiff simply believes his request for a COVID-19 vaccination exemption based on his religious beliefs resulted in his termination, such "vague, conclusory allegations do not raise Plaintiff's right to relief above a speculative level." *See Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 115 (2002) (citing Harris, 510 U.S. at 21).

Here, Plaintiff fails to identify any similarly situated co-workers who were not part of his protected class who were treated differently than he was or allege any facts that his vaccine exemption was even denied, let alone for religious reasons. As such, Plaintiff fails to state a religious discrimination claim on which relief may be granted.

### D. Retaliation

A Title VII retaliation claim has the following three prima facie elements: (1) the employee engaged in protected activity, (2) the employee suffered an adverse employment action, and (3) a causal connection exists between the adverse employment action and the protected activity. *E.E.O.C. v. Kohler Co.*, 335 F.3d 766, 772 (8th Cir.

16

2003). To show a causal connection, a plaintiff must show that his protected activity was a but-for-cause of his employer's adverse action. *Univ. of Tex. Sw. Med. Ctr. V. Nassar*, 570 U.S. 338, 362 (2013).

As previously discussed, however, Plaintiff admits that Blue Valley's stated basis for terminating his employment was for disciplinary reasons relating to his alleged behavior involving a child in Blue Valley's care, rather than in response to other employee complaints about him. Moreover, aside from checking a box on his Complaint alleging retaliation, and concluding he was terminated in part "in retaliation for reporting discrimination," Plaintiff does not provide any facts supporting a retaliation claim. *See generally* Filing No. 1 at 3, 10, 18–23.

Plaintiff fails to state a retaliation claim on which relief may be granted as such "vague, conclusory allegations" do not meet the pleading standards required for a Title VII retaliation claim. *Morgan*, 536 U.S. at 115 (2002).

### E. Disability Discrimination

Plaintiff alleges disability discrimination under Title VII. Title VII, however, does not apply to disability-discrimination claims. *Loos v. Napolitano*, 665 F. Supp. 2d 1054, 1057 (D. Neb. 2009) (citing 42 U.S.C. § 2000e–2(a) (Title VII makes it unlawful for employer to discriminate against employee based on race, color, religion, sex, or national origin; disability not mentioned)).

Plaintiff's disability claim therefore is not cognizable under Title VII and shall be dismissed with prejudice.

## IV. CONCLUSION

For the reasons set forth above, Plaintiff's Title VII disability discrimination claim shall be dismissed with prejudice. While his sexual discrimination claim alleging disparate treatment may proceed, his remaining claims of sexual harassment-hostile work environment, religious discrimination, and retaliation, as currently pleaded fail to state a claim on which relief may be granted and are subject to dismissal on initial review. However, on the Court's own motion, Plaintiff will be given 30 days in which to file an amended complaint that states facts supporting a plausible claim or claims for relief for sexual harassment/hostile work environment, religious discrimination, and retaliation.

IT IS THEREFORE ORDERED that:

1. Plaintiff's Title VII and NFEPA claim for disability discrimination is dismissed with prejudice.

2. Plaintiff's Title VII claim for sexual discrimination-disparate treatment may proceed.

3. Plaintiff shall have 30 days from the date of this Memorandum and Order to file an amended complaint that clearly states a claim or claims upon which relief may be granted for sexual harassment/hostile work environment, religious discrimination, and retaliation in accordance with this Memorandum and Order. If Plaintiff fails to file an amended complaint or seek additional time to do so within the time specified, this matter will be dismissed without further notice.

3. The Court reserves the right to conduct further review of Plaintiff's claims pursuant to 28 U.S.C. § 1915(e) in the event he files an amended complaint.

4. The Clerk's Office is directed to set a pro se case management deadline in this case using the following text: **September 11, 2023:** Check for amended complaint.

Dated this 11th day of August, 2023.

BY THE COURT:

Joseph F. Bataillon
Senior United States District Judge